UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Essex Insurance Company,

    Plaintiff,

v.

Night & Day Management, LLC t/a The Fur Factory, et al.

    Defendants.

CIVIL ACTION NO. 1:06cv1280

**PLAINTIFF ESSEX INSURANCE COMPANY'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

On or around March 12, 2005, Emile Mazloum ("Mazloum") allegedly was the victim of a vicious beating and the target of racial epithets while a patron at a night club owned and operated by Defendant Night & Day Management, LLC t/a The Fur Factory ("Night & Day"). In an alleged effort to cover up the assault, Night & Day and individuals associated with Night & Day (collectively, the "Night & Day Defendants") purportedly destroyed evidence of the incident. The Night & Day Defendants tendered to Essex Insurance Company ("Essex") the resulting personal injury and civil rights action brought by Mazloum. There is no coverage for that claim under the Essex policy, which excludes coverage for claims that arise out of intentional acts, assault and/or battery, and discrimination, among other policy defenses that are discussed below.

Defendants' claim that Mazloum's lawsuit is covered must fail because:

(1)     The beating of Mazloum and the destruction of evidence were intentional and thus not an "occurrence" covered under the Essex policy (Exhibit 1);[1]

---

[1] Exhibits 1-4 to this memorandum contain the pages from the Essex policy that include the policy provisions relevant to Essex's Motion for Summary Judgment. The full text of the

351646 v 1

(2) in two separate provisions, the Essex policy expressly bars coverage for any claim arising out of an assault and/or battery (Exhibit 2);

(3) the Essex policy bars coverage for a discrimination claim of any type (Exhibit 3);

(4) the Essex policy does not provide coverage for the deliberate destruction of evidence because such claim does not arise out of bodily injury or property damage (Exhibit 4); and

(5) the Essex policy and applicable law bar coverage for punitive damages (Exhibit 3).

There are no material facts in dispute, and Essex is entitled, as a matter of law, to a declaration that it has no duty to defend or to indemnify the Night & Day Defendants.[2]

## I.   BACKGROUND[3]

### A.   The Beating of Mazloum While at the Nightclub

Mazloum's complaint alleges the following: On or around March 12, 2005, Mazloum – who describes himself as "a person of Arabian ethnicity" and as "Middle-Eastern in appearance" – was a patron at Fur Nightclub (the "Nightclub"), which is owned and operated by Night & Day.  *See* Statement of Facts ¶ 1.  Mazloum alleges that individual Defendants Michael Rehman ("Rehman"), Michael Persons ("Persons") and John Fiorito ("Fiorito") worked at the Nightclub.

---

Essex policy is attached as Exhibit 1 to the Declaration of Benjamin C. Eggert, which has been filed contemporaneously with this brief.

[2] As discussed in Essex's motion for summary judgment, Essex has moved for an extension of time in which to submit dispositive motions on the basis that Defendants have not yet fully responded to the discovery timely sought by Essex.  Because the Court has not ruled on this motion, Essex submits its motion for summary judgment within the deadline provided by the current scheduling order.  Given that Defendants' production of relevant documents is ongoing, Essex respectfully requests that it be permitted to supplement its motion after Defendants have completed their production of documents.

[3] The undisputed material facts necessary to support Essex's motion for summary judgment are set forth in Essex's Statement of Undisputed Material Facts ("Statement of Facts") that has been filed contemporaneously pursuant to Local Rule 56.1.  Essex submits the following brief description of the claim background to present those same facts in narrative fashion.

*Id.* ¶ 4. According to Mazloum, he was among a number of patrons dancing on a stage at a fashion show at the Nightclub. *Id.* ¶ 5. Mazloum alleges that he had permission to be on the stage because he had an association with the promoter of the event held at the Nightclub. *Id.*

While descending a stairway from the stage, Mazloum allegedly was grabbed by Persons, and the two fell down the stairs. *Id.* ¶ 6. Mazloum alleges that at the bottom of the stairway, several off-duty Metropolitan Police Department officers, who also were patrons of the Nightclub, interceded, identified themselves as police officers, and handcuffed Mazloum. *Id.* ¶ 7. After Mazloum was placed face down on the floor, Persons and one of the off-duty police officers allegedly began to beat Mazloum from behind and in the face. *Id.* ¶ 8.

Persons and one or more of the off-duty police officers allegedly dragged a handcuffed Mazloum up a different stairway and out of the Nightclub. *Id.* ¶ 9. Mazloum alleges that outside of the Nightclub, Persons and one or more of the off-duty police officers dropped him, causing his head to strike the street. *Id.* While bleeding profusely, Mazloum allegedly tried to speak to one of the off-duty police officers to determine why he was being beaten, and the officer purportedly responded: "Shut up, you fucking Al-Qaeda" and kicked Mazloum. *Id.* ¶ 10. Soon thereafter, on-duty police officers allegedly arrived and questioned those involved in the altercation with Mazloum. *Id.* ¶ 11. According to Mazloum, after the on-duty police officers released him, he went to a local hospital to have numerous injuries treated, including a broken nose, bloody left eye, cuts, scrapes, swelling and bruises. *Id.* ¶ 12.

The next day, according to Mazloum, Rehman and Fiorito had a conversation with one of the off-duty police officers in which they discussed the destruction of videotape from the Nightclub's security cameras, which allegedly would have shown the beating of Mazloum. *Id.* ¶ 13. When a friend of Mazloum's went to the Nightclub to obtain information about purported

videotaped evidence of the beating, Fiorito allegedly became angry and threatened that Mazloum would get "burned" if he pursued a lawsuit. *Id.* ¶ 14. Mazloum's complaint alleges that Mazloum's friend pressed for videotaped evidence of the beating, but Fiorito responded that the videotapes were "gone." *Id*.

### B.   The *Mazloum* Action

On January 4, 2006, Mazloum filed his initial complaint against Defendants Night & Day, Rehman and others in a matter styled *Emile Mazloum v. District of Columbia Metropolitan Police Department, et al.*, Civ. A. No. 06cv00002 (D.D.C.). Mazloum later filed a first amended complaint that also named Defendants Persons and Fiorito, among others. *Id.* ¶ 15. Although the *Mazloum* Action complaint includes numerous causes of actions, only three counts (Counts II, V and VIII) remain pending against the Night & Day Defendants; these counts are the primary subject of Essex's motion for summary judgment.[4]

First, the *Mazloum* Action complaint asserts a cause of action for assault (Count II) against Persons and against Night & Day (on the basis of *respondeat superior*). *Id.* ¶¶ 16. Mazloum alleges that Persons "intentionally threatened harm," and "intentionally struck, beat and kicked [him] severely … causing him severe bodily injury." *Id*. Mazloum further alleges that Persons was liable for "striking, beating [and] kicking" him and that Mazloum had "engaged in no conduct that would justify assaulting him." *Id*.

Second, the *Mazloum* Action includes a cause of action for discrimination and retaliation

---

[4] Mazloum originally asserted against the Night & Day Defendants causes of action for conspiracy to interfere with civil rights under 42 U.S.C § 1985 (Count III) and common law conspiracy (Count VI). The court in the *Mazloum* Action dismissed these counts against the Night & Day Defendants in an order entered June 27, 2006. *Id.* ¶ 21. The dismissal of these counts does not impact the application of the provisions discussed below that preclude coverage for the *Mazloum* Action in its entirety. In addition, on May 9, 2006, the District of Columbia asserted a cross-claim for contribution against the Night & Day Defendants. *Id.* ¶ 20. The contribution claim is excluded from coverage by the same policy exclusions that bar coverage for Mazloum's claim.

4

under the District of Columbia Human Rights Act (Count V) against all of the Night & Day Defendants. *Id.* ¶¶ 17. Mazloum alleges that Fiorito and Rehman retaliated against him when they learned of his efforts to initiate a formal police investigation. *Id*. More specifically, Mazloum alleges that the Night & Day Defendants "took the extraordinary step of destroying the crucial videotaped evidence of the beating … in order to protect" Night & Day. *Id.*

Third, Mazloum also asserts a cause of action for spoliation of evidence (Count VIII) against Rehman, Fiorito and Night & Day (on the basis of *respondeat superior*). *Id.* ¶ 18. Mazloum alleges that, aware that he had a civil claim against them, Rehman and Fiorito "oversaw, authorized and/or participated in the destruction of videotape evidence from security camera monitors … that would have shown [him] being kicked and beaten," which allegedly impacted his ability to prosecute his claims. *Id*.

Mazloum seeks unspecified compensatory damages for physical injuries, pain and suffering, medical expenses, lost earnings and the deprivation of certain rights. Mazloum also requests unspecified punitive damages. *Id.* ¶ 19.

### C. The Policy

Essex issued Commercial General Liability Policy No. 3CK9807 to Night & Day for the policy period August 26, 2004 to August 26, 2005 (the "Policy"). *Id.* ¶ 22. The Policy affords coverage of $1 million per occurrence and a $2 million aggregate limit for general liability, subject to a $1,000 deductible. *Id*. The Policy extends coverage to the named insured, Night & Day, as well as its members, managers and employees. *Id.* ¶ 23.

#### 1. Definitions of "Bodily Injury," "Property Damage" and "Occurrence"

The Policy provides coverage for sums that "the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'…." *Id.* ¶ 24. The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death

resulting from any of these at any time." *Id.* ¶ 24. "Property damage" is defined, in relevant part, as "[p]hysical injury to tangible property, including all resulting loss of use of that property." *Id.* ¶ 26. The Policy also requires that the "bodily injury" or "property damage" be caused by an "occurrence," which in turn is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* ¶ 25.

### 2. The Intentional Act Exclusion

The Policy includes exclusions that limit coverage. The Policy provides that:

This insurance does not apply to:

**a.   Expected Or Intended Injury**

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

*Id.* ¶ 29 (the "Intentional Acts Exclusion").

### 3. The Assault and/or Battery Exclusions

The Policy further provides that

> [t]he coverage under this policy does not apply to any claim, suit, cost or expense arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person.

*Id.* ¶ 30. Similarly, a second provision of the Policy also excludes from coverage

> [a]ssault and/or [b]attery, or ... any act or omission in connection with the prevention or suppression of such acts whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person ....

*Id.* ¶ 31. Collectively, these exclusions are referred to as the "Assault and/or Battery Exclusions."

### 4. The Discrimination Exclusion

The Policy also provides that

> [d]iscrimination charges, of any kind, actual and alleged, are not covered under the policy nor are expenses or obligation to share damages with or repay another whom must pay from same.

*Id.* ¶ 32 (the "Discrimination Exclusion").

### 5. The Owned Property Exclusion

The Policy also provides that:

> This insurance does not apply to:
>
> \*   \*   \*
>
> **j.   Damage To Property**
>
> "Property damage" to:
>
> (1)  Property you own, rent or occupy;
>
> \*   \*   \*
>
> (4)  Personal property in the care, custody or control of the insured[.]

*Id.* ¶ 33 (the "Owned Property Exclusion").

### 6. The Punitive Damages Exclusion

Finally, the Policy provides that

> [p]unitive or [e]xemplary [d]amages [are] not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same.

*Id.* ¶ 34 (the "Punitive Damages Exclusion").

### D.   The Coverage Dispute

After the Night & Day Defendants tendered the *Mazloum* Action to Essex, Essex agreed to provide a defense, subject to a reservation of the right to deny coverage and to file a declaratory judgment action. *Id.* ¶ 35. Essex thereafter filed this coverage action on July 19, 2006. *Id.* ¶ 36.

## II.  ARGUMENT

Summary judgment is appropriate where "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Here, the material facts are not in dispute and the only issues presented are strictly legal ones:  do the Policy's terms and exclusions – such as exclusions for intentional acts, assault and/or battery, discrimination, and certain property damage – bar coverage for the *Mazloum* Action?  As shown below, the answer to these questions is an unqualified "yes."  The *Mazloum* Action asserts that the Night & Day Defendants are liable for the beating of Mazloum and the deliberate destruction of evidence of the beating.  These claims are not covered and are barred by exclusions in the Policy, and Essex therefore is entitled to a declaration that it has no duty to defend or to indemnify the Night & Day Defendants.

Under established rules of construction, the interpretation of an insurance policy such as the one issued to Night & Day is a matter of law for the Court, *see Rubins Contractors, Inc. v. Lumbermans Mut. Ins. Co.*, 821 F.2d 671, 673 (D.C. Cir. 1987), and where "policies are clear and unambiguous, they will be enforced by the courts as written, so long as they do not violate a statute or public policy."  *Chase v. State Farm Fire & Cas. Ins. Co.*, 780 A.2d 1123, 1132 (D.C. 2001) (citation and quotation omitted).  *Accord Hartford Accident & Indem. Co. v. Pro-Football, Inc.*, 127 F.3d 1111, 1114 (D.C. Cir. 1997).  Here, these principles mandate a ruling that, as a matter of law, the Policy provides no coverage for the *Mazloum* Action for the reasons set forth at greater length below.

> A.  **Mazloum Alleges Intentional Acts that Do Not Constitute an Insured "Occurrence" and are Barred From Coverage By the Intentional Acts Exclusion**

Mazloum alleges that he was intentionally beaten by Defendants and that Defendants thereafter intentionally destroyed possible videotape evidence of the beating. Regardless of how Mazloum styled the causes of action in his lawsuit, the wrongful acts allegedly committed by the Night & Day Defendants could not have been accidental and therefore do not constitute an "occurrence" that triggers coverage. Similarly, the Night & Day Defendants could foresee or expect that assault, discrimination and the destruction of evidence would result in injury to Mazloum; thus, the *Mazloum* Action also is excluded from coverage under the Intentional Acts Exclusion.

The Policy provides coverage only for an "occurrence," which is defined in relevant part to be an "accident." *See* Statement of Facts ¶ 25. The intentional acts of an insured that cause damages that the insured could foresee or expect are not considered accidental and therefore are not an "occurrence." *See Sheets v. Brethren Mut. Ins. Co.*, 679 A.2d 540, 547-49 (Md. 1996). *See also Legg Mason Wood Walker, Inc. v. Ins. Co. of N.A.*, No. 78-0927, 1980 WL 203, at *5 (D.D.C. July 24, 1980) (holding that intentional discrimination is not an occurrence); *City of Sharonville v. Am. Employers Ins. Co.*, 818 N.E.2d 295, 299 (Ohio Ct. App. 2004) (holding that spoliation claim in civil rights lawsuit was not a covered occurrence because cover-up was intentional). Likewise, where a claim for which an insured seeks coverage explicitly states that the insured actually intended its actions, then an intentional acts exclusion will apply regardless of how the claim is styled. *See Letitz Mut. Ins. Co. v. Bell,* 724 A.2d 102, 110 (Md. 1999)*; Pettit v. Erie Ins. Exch.*, 709 A.2d 1287, 1292 (Md. 1998).

The three causes of action asserted against the Night & Day Defendants – no matter how they are styled – do not arise out of an accident and, thus, do not constitute an "occurrence"

under the Policy. Assault (Count II), discriminatory retaliation (Count V) and deliberate destruction of evidence (Count VIII) cannot be deemed accidental and thus are not an "occurrence" giving rise to coverage under the Policy's insuring agreement. *See* Statement of Facts ¶¶ 16, 17, 18 and 25. The mere labels of Mazloum's causes of action – such as negligent or reckless spoliation – measured against the litany of deliberate and intentional actions actually alleged in the *Mazloum* Action do not trigger coverage under District of Columbia law.

Coverage for the *Mazloum* Action similarly is barred by the Policy's Intentional Acts Exclusion. Mazloum alleges that the Night & Day Defendants intended the beating, the retaliatory discrimination and the destruction of evidence. For example, Mazloum alleges that Persons "intentionally threatened harm" and "intentionally struck, beat and kicked" Mazloum. *Id.* ¶ 16. Similarly, Mazloum alleges that Rehman and Fiorito retaliated and discriminated against Mazloum by "t[aking] the extraordinary step of destroying crucial videotaped evidence of the beating." *Id.* ¶ 17. Finally, Mazloum alleges that Rehman and Fiorito spoliated evidence by "overs[eeing], authoriz[ing] and/or participat[ing] in the destruction of videotape evidence from security camera monitors." *Id.* ¶ 18. Accordingly, there is no coverage for the *Mazloum* Action because the Night & Day Defendants' alleged actions were deliberate and thus barred by the Intentional Acts Exclusion.

> **B.   The Assault and/or Battery Exclusions Bar Coverage for the *Mazloum* Action In Its Entirety Because All Counts Arose Out of the Beating of Mazloum**

Mazloum's beating and the resulting cover up indisputably arose out of an alleged assault and/or battery and therefore are not covered under the Policy. The damages suffered by Mazloum – regardless of whether the underlying claims were styled as assault, discrimination or spoliation – arose out of an assault and/or battery. Because the Policy bars coverage for any claim or lawsuit "arising out of" an assault and/or battery, there is no coverage for the *Mazloum*

Action.

The Policy states, in two separate provisions, that there is no coverage for any claims arising out of assaults and/or batteries. In particular, the Assault and/or Battery Exclusions provide that

> *[t]he coverage under this policy does not apply to any claim, suit, cost or expense <u>arising out of</u> assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts*, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person.

*Id.* ¶ 30 (emphasis added).[5]

Under similar facts and policy language, courts uniformly hold that assaults like the one at issue here are barred by an assault and/or battery exclusion. For example, this Court has ruled that a nearly identical assault and/or battery exclusion in another Essex policy barred coverage for claims that a dance club negligently failed to hire sufficient security personnel to prevent an assault and/or battery by a patron of the club. *See Stiglich v. Tracks, D.C., Inc.*, 721 F. Supp. 1386, 1387-88 (D.D.C. 1989). More recently, in *I.J.G., Inc. v. Penn-America Insurance Co.*, 803 A.2d 430 (D.C. 2002), the District of Columbia Court of Appeals barred coverage for an altercation that broke out in a nightclub under a similar assault and/or battery exclusion. In reviewing the underlying facts for which coverage was sought, the *IJG* court noted that "close inspection of the [underlying] complaint … reveals, without doubt, that the pleading sets forth a cause of action in tort which is plainly bottomed on an affray at [the nightclub] at two o'clock in the morning on October 12, 1997." *Id.* at 435. Applying the assault and/or battery exclusion to

---

[5] The Policy similarly provides that "The coverage under this policy does not apply to [claims] arising out of … Assault and/or Battery, or out of any act or omission in connection with the prevention of suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person." *Id.* ¶ 31.

the facts, the *IJG* court then held that the insurer had no duty to defend or indemnify its insured for a negligence claim because of the "straightforward allegations of physical injury occurring as a consequence of a physical altercation…." *Id.* at 436. *See also Interstate Fire & Cas. Co. v. 1218 Wisconsin Ave., Inc.,* 136 F.3d 830, 834 (D.C. Cir. 1998) (holding that exclusion barred coverage for intentional infliction of emotional distress claim because "[a]ny claim against [the insured] derived from the assault and battery claim plainly 'ar[ose] out of … assault and/or battery' and therefore is subject to the assault and battery exclusion.")[6]

Under this authority, the Policy's Assault and/or Battery Exclusions bar coverage for Mazloum's cause of action for assault (Count II). Furthermore, the Assault and/or Battery Exclusions bar coverage for all aspects of the *Mazloum* Action, including the causes of action for discrimination (Count V) and negligent or reckless spoliation of evidence (Count VIII). The Policy precludes coverage for any claim "arising out of" an assault and/or battery. The alleged deliberate destruction of evidence to conceal the assault clearly "arises out of" the assault and, as stated in *IJG* and *Interstate Fire*, was "plainly bottomed on an affray at [the nightclub]" and was "derived from" the assault. 803 A.2d at 435; 136 F.3d at 834. The discrimination cause of

---

[6] Similarly, under an Essex policy that included an endorsement identical to that issued to Night & Day, the United States District Court for the District of Maryland ruled that assaults of patrons at a bar were excluded from coverage under the Policy. *See Kamaki Skiathos, Inc. v. Essex Ins. Co.*, 396 F. Supp. 2d 624, 626-29 (D. Md. 2005) (referencing the same policy form M/E-024 (9/00)) upon which Essex relies here). In analyzing whether the three underlying lawsuits against the bar were covered, the *Kamaki* court reasoned that, even though each action referred in some way to the insured's alleged negligence, "there would be no reason to expect that [the claimant] was complaining of anything other than assault and/or battery." *Id.* at 628. *See also Penn-America Ins. Co. v. Lewis*, 395 F. Supp. 2d 250, 254 (D. Md. 2005) ("[t]he gravamen of the [claimant's] allegations in the underlying suit was that the bouncer beat her up without just cause[, which] constitutes an assault and battery and is excluded"); *First Fin. Ins. Co. v. GLM, Inc.*, 88 F. Supp. 2d 425, 429-431 (D. Md. 2000); *Northfield Ins. Co. v. Boxley*, 215 F. Supp. 2d 656, 660 (D. Md. 2002); *Sphere Drake Ins., PLC v. Carolina Rest., Inc.*, Civ. A. No. HAR 91-1769, 1992 WL 138352, at * 3 (D. Md. June 3, 1992).

action, while independently barred from coverage by the discrimination exclusion discussed below, also "arises out of" the assault as Mazloum pleads that the discriminatory utterances were made either by the same individuals who beat him or others (*i.e.*, police officers) who had an obligation to prevent his beating. *See also Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1078 (9th Cir. 1985) (holding that exclusion for bodily injury barred coverage for civil rights claims because the claims arose out of bodily injury, reasoning that the validity of the civil rights claim depended on the underlying violence against the claimant).[7] Thus, the Assault and/or Battery Exclusions bar coverage for the *Mazloum* Action in its entirety.

### C. The Discrimination Exclusion Bars Coverage for Mazloum's District of Columbia Human Rights Act Claim

Mazloum's cause of action for violation of the District of Columbia Human Rights Act (Count V) alleges that he was discriminated against by the Night & Day Defendants based on his race, appearance, perceived religion and national origin. This cause of action fits squarely within the Discrimination Exclusion and therefore is not covered. Moreover, Mazloum's cause of action for spoliation of evidence alleges that evidence was destroyed in retaliation against Mazloum for pursuing his claim, a course of conduct which also violates the Human Rights Act. Both claims constitute discrimination charges "of any kind," and thus are excluded from coverage under the Discrimination Exclusion.

As set forth above, the Policy's Discrimination Exclusion states that "[d]iscrimination charges, ***of any kind***, actual and alleged, are not covered under this policy, nor any expenses or

---

[7] *See also Engsburg v. Town of Milford*, 597 F. Supp. 251, 253-54 (W.D. Wis. 1984) (civil rights claims barred by property damage exclusion because civil rights "claims would be nonexistent had the damage to tangible property not occurred."); *The Apartment Store v. Mount Vernon Fire Ins. Co.*, 132 Fed. Appx. 136 (9th Cir. 2005) (holding that spoliation claim was barred by exclusion for return of funds because the claim arose out of claim that insured destroyed evidence of its failure to return funds owed to the claimant).

obligation to share damages with or repay another whom must pay from same." *See* Statement of Facts, ¶ 32 (emphasis added). Where the terms of a policy are clear and unambiguous, a court must enforce the terms as written. *See Chase*, 780 A.2d at 1132. Courts routinely hold that discrimination exclusions of the type found in the Policy bar coverage for civil rights claims.[8]

Here, the claim for violations of the District of Columbia Human Rights Act, including the allegation that the Night & Day Defendants retaliated against Mazloum by destroying evidence, simply are not covered under the Policy. Mazloum alleges that in singling him out for removal from the Nightclub and subsequently assaulting him, the Night & Day Defendants discriminated against him. *See* Statement of Facts, ¶ 17. In support of this claim, Mazloum, who describes himself as "Middle-Eastern in appearance," alleges that he was referred to as a "fucking Al-Qaeda" during the assault. *Id.* ¶¶ 2 and 10. Mazloum further alleges that Defendants Fiorito and Rehman retaliated against him in violation of the Human Rights Act after learning of Mazloum's intent to initiate a formal police investigation by warning Mazloum's friend that Mazloum should not proceed with his claim, and by destroying videotaped evidence of the assault. *Id.* ¶ 17.

The allegations of spoliation are also barred by the Discrimination Exclusion. Mazloum alleges that the Night & Day Defendants "oversaw, authorized, and/or participated in the destruction of videotape evidence from security camera monitors mounted inside and outside the Nightclub that would have shown Mr. Mazloum being kicked and beaten." *Id.* ¶ 18. Mazloum

---

[8] *See, e.g.*, *Michaelian v. State Comp. Ins. Fund*, 58 Cal. Rptr. 2d 133, 141-42 (Cal. Ct. App. 1996) (discrimination exclusion barred coverage for claims of sexual harassment and constructive discharge resulting from sexual harassment); *New England Mut. Life Ins. Co. v. Liberty Mut. Ins. Co.*, 667 N.E.2d 295, 297-99 (Mass. App. Ct. 1996) (discrimination exclusion barred coverage for claims of sex discrimination in violation of 42 U.S.C. §§ 2000e-1 *et seq.*, violation of Equal Pay Act, violation of Massachusetts Civil Rights Act); *Reliable Springs Co. v. St. Paul Fire & Marine Ins. Co.*, 869 F.2d 993, 995 (6th Cir. 1989) (discrimination exclusion barred coverage for Age Discrimination in Employment Act claims).

further alleges that the Night & Day Defendants destroyed the videotaped evidence in retaliation against Mazloum for pursuing his civil rights claim and in order to frustrate Mazloum's efforts to pursue that claim in further violation of the District of Columbia Human Rights Act. *Id.* ¶¶ 17 and 18. Because Mazloum's claim for spoliation of evidence is based on alleged discrimination, the Discrimination Exclusion bars coverage for this cause of action. *See New England Mut. Life Ins. Co. v. Liberty Mut. Ins. Co.*, 667 N.E.2d 295, 297-99 (Mass. App. Ct. 1996) (discrimination exclusion barred coverage for claims of intentional misrepresentation, negligent supervision, loss of consortium and property damage related to discrimination claims); *Reliable Springs Co. v. St. Paul Fire & Marine Ins. Co.*, 869 F.2d 993, 995 (6th Cir. 1989) (discrimination exclusion barred coverage for negligent infliction of emotional distress claims related to Age Discrimination in Employment Act claims).

### D. Mazloum's Spoliation Cause of Action Is Not "Bodily Injury" or "Property Damage" and Is Otherwise Barred by the Owned Property Exclusion

No coverage is available for Mazloum's spoliation cause of action (Count VIII) because spoliation does not constitute "bodily injury" or "property damage" within the meaning of the Policy. Mazloum does not allege that he or his tangible property were physically harmed by the alleged destruction of the videotaped evidence of the assault. Therefore, this claim does not fall within the scope of the Policy's Insuring Agreement, and coverage is accordingly barred.

The Policy provides that Essex "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *See* Statement of Facts, ¶ 24. The Night & Day Defendants assert that Mazloum's spoliation claim is covered "property damage" on the basis that Mazloum allegedly lost the use of unspecified videotape evidence, which resulted in the decrease in the estimated likelihood of success in his civil suit due to the alleged destruction of evidence. Put differently,

the Night & Day Defendants essentially contend that alleged damage to the *Mazloum* Action is a form of "property damage." Numerous court have rejected this argument. *See Essex Ins. Co. v. Wright*, -- N.E. 2d --, 2007 WL 438250, at *2 (Ill. Ct. App. 2007) (holding that, under Essex policy with terms similar to the policy at issue, the diminution in the value of a claim as a result of destruction of evidence did not constitute property damage); *Iowa Mut. Ins. Co. v. Hennings*, No. 05-3073, 2006 WL 2945477, at *7 (C.D. Cal. Oct. 13, 2006) ("Property damage is limited to damage to tangible property. The damage to the cause of action is not damage to tangible property.").[9]

Mazloum asserts that, as a result of the destruction of evidence by the Night & Day Defendants, his ability to pursue his claims of assault and discrimination against the Defendants has been impaired. *See* Statement of Facts, ¶ 18. Such a harm to a claim of legal right does not constitute "bodily injury, sickness or disease sustained by a person," nor does damage to that legal right constitute "[p]hysical injury to tangible property," under the terms of the Policy. Therefore, no coverage is available to the Night & Day Defendants for Mazloum's spoliation cause of action.

Even if the Court were to find that Mazloum's spoliation cause of action constitutes "bodily injury" or "property damage" within the meaning of the Policy, this cause of action still would not be covered under the Policy based on the Owned Property Exclusion. This exclusion provides that the Policy does not apply to "property damage" to "property you own, rent or occupy" or "personal property in the care, custody or control of the insured." *See* Statement of Facts, ¶ 33. The videotape evidence at issue in the *Mazloum* Action allegedly was owned by, and was within the custody and control of, Night & Day. *Id.* Because this claim is based on the

---

[9] *See also*, *Shaw v. Cambridge Integrated Serv. Group*, 888 So.2d 58, 63 (Fla. Ct. App. 2004); *Johnson v. Evan Hall Sugar Co-op., Inc.*, 836 So.2d 484, 489 (La. Ct. App. 2002).

destruction of property owned by Night & Day, the Owned Property Exclusion bars coverage for this cause of action.

### E. The Punitive Damages Exclusion Bars Coverage for Mazloum's Punitive Damages Claim

In the underlying lawsuit, Mazloum seeks punitive damages, which are barred by the plain language of the Policy. *See* Statement of Facts ¶ 19. Specifically, the Policy provides that "[p]unitive or [e]xemplary [d]amages [are] not covered under this policy …." *Id.* ¶ 34. Once again, where the terms of a policy are clear and unambiguous, a court must enforce the terms as written. *See Chase*, 780 A.2d at 1132. Under this authority and the Punitive Damages Exclusion, the punitive damages sought in the *Mazloum* Action simply are not covered under the Policy. *See Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, Civ. A. No. 83-3347, 1988 WL 877629, at *81 (D.D.C. Sept. 7, 1988) (holding that punitive damages exclusion bars coverage for punitive damages claim).[10]

Moreover, the straightforward application of the Punitive Damages Exclusion is supported by general principles of public policy. District of Columbia law imposes punitive damages to punish misconduct and deter future wrongdoing. Allowing insurance coverage of punitive damages would undercut both the deterrence and punishment rationales that are supported by punitive damages. *See Pray v. Lockheed Aircraft Corp.*, 644 F. Supp. 1289, 1298 (D.D.C. 1986); *Salus Corp. v. Cont'l Cas. Co.*, 478 A.2d 1067, 1070 (D.C. 1984); *In re Estate of Corriea*, 719 A.2d 1234, 1240 (D.C. 1998).

Accordingly, Essex is entitled to a declaration that there is no coverage under the Policy for punitive damages sought in the *Mazloum* Action.

---

[10] *See also Essex Ins. Co. v. Peterson*, Civ. A. No. 4:05cv2255, 2006 WL 3103081, at *5 (E.D. Mo. Oct. 31, 2006) (holding that punitive damages exclusion in Essex policy barred coverage for punitive damages sought by claimant).

## III. **CONCLUSION**

Coverage is excluded for the *Mazloum* Action in its entirety because all the counts arise out of intentional acts that both do not constitute an "occurrence" and are barred by the Intentional Acts Exclusion. Coverage similarly is excluded for all counts in the *Mazloum* Action by the Policy's Assault and/or Battery Exclusions because they arise out of an assault and/or battery. The causes of action for discrimination (Count V) and spoliation (Count VIII) are barred by the Discrimination Exclusion. The cause of action for spoliation (Count VIII) is both outside the scope of coverage and barred by the Policy's Owned Property Exclusion. Finally, Mazloum's punitive damages claim is both barred by the Punitive Damages Exclusion and District of Columbia public policy. For the foregoing reasons, under the relevant policy language and applicable law, Essex is entitled to summary judgment as a matter of law and a declaration that it has no duty to defend or to indemnify the Night & Day Defendants for the *Mazloum* Action.

Dated: April 2, 2007                           Respectfully submitted,

By: /s/ Benjamin C. Eggert /s/
Sean M. Hanifin, Bar No. 358347
Benjamin C. Eggert, Bar No. 474218
ROSS, DIXON & BELL, LLP
2001 K Street, N.W.
Washington, D.C. 20006-1040
Telephone: (202) 662-2000
Facsimile: (202) 662-2190
E-mail: shanifin@rdblaw.com
E-mail: beggert@rdblaw.com

*Attorneys for Plaintiff*
*Essex Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2 day of April 2007, a copy of the foregoing Essex Insurance Company's Memorandum in Support of its Motion for Summary Judgment was filed electronically with the Clerk of the Court using the CM/ECF system, which will send electronic notice of such filing to the following counsel of record:

>Patrick Kearney, Esq.
>Selzer Gurvitch Rabin & Obecny, Chartered
>4416 East West Highway, Fourth Floor
>Bethesda, MD 20814
>
>David B. Stratton, Esq.
>Jordan Coyne & Savits, L.L.P.
>1100 Connecticut Avenue, N.W., Suite 600
>Washington, D.C. 20036

                                       /s/ Benjamin C. Eggert /s/
                                       Benjamin C. Eggert

351646 v 1