UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Essex Insurance Company,<br><br>      Plaintiff,<br><br>v.<br><br>Night & Day Management, LLC t/a The Fur Factory, et al.<br><br>      Defendants. | CIVIL ACTION NO. 1:06cv1280 |

**ESSEX INSURANCE COMPANY'S
STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, plaintiff Essex Insurance Company ("Essex") submits its Statement of Undisputed Material Facts in support of its Motion for Summary Judgment.

**I.    THE ALLEGED BEATING OF MAZLOUM WHILE AT THE NIGHTCLUB**

1.    According to the Complaint filed in *Emile Mazloum v. District of Columbia Metropolitan Police Department, et al.*, Civ. A. No. 06cv00002 (D.D.C.) (the "*Mazloum* Action" and the "*Mazloum* Complaint") (attached as Exhibit 1 to the Declaration of Benjamin C. Eggert),[1] Emile Mazloum ("Mazloum") was a patron at Fur Nightclub (the "Nightclub") on or around March 12, 2005. *See* Complaint, ¶ 15.

2.    Mazloum describes himself as "a person of Arabian ethnicity." *Id.* ¶ 2 (Ex. 1). Mazloum also describes himself as "Middle-Eastern in appearance." *Id.* ¶ 76 (Ex. 1).

3.    The Nightclub is owned and operated by Defendant Night & Day Management, LLC t/a The Fur Factory ("Night & Day"). *Id.* ¶ 9 (Ex. 1).

---

[1] Exhibit 1 and all other exhibits referenced in this Statement of Undisputed Material Facts are attached to the Declaration of Benjamin C. Eggert, which has been filed contemporaneously with this Statement of Undisputed Material Facts.

4. The *Mazloum* Complaint alleges that Defendants Michael Rehman ("Rehman"), Michael Persons ("Persons") and John Fiorito ("Fiorito") worked at the Nightclub at all relevant times. *Id.* ¶ 11, 13 (Ex. 1). Defendant Rehman allegedly is also known as "Mike Romeo." *Id.* ¶ 13 (Ex. 1).

5. According to the *Mazloum* Complaint, Mazloum was among a number of patrons dancing on a stage at a fashion show held at the Nightclub. *Id.* ¶ 17 (Ex. 1). Mazloum allegedly had permission to be on the stage because he had an association with the promoter of the event at the Nightclub. *Id.* ¶ 17 (Ex. 1).

6. Mazloum alleges that while he was descending a stairway from the stage, he was grabbed by Defendant Persons. *Id.* ¶ 18 (Ex. 1). As Persons was taking Mazloum down the stairs from the stage, Persons allegedly bumped into a third individual, and Person and Mazloum fell to the floor. *Id.* ¶ 19 (Ex. 1).

7. Mazloum alleges that after Persons and Mazloum fell to the floor, several off-duty Metropolitan Police Department officers, who also were patrons of the Nightclub, identified themselves as police officers, interceded in the incident, and handcuffed Mazloum. *Id.* ¶¶ 20-21 (Ex. 1).

8. Mazloum alleges that while he was lying face down on the floor, Persons and one of the off-duty police officers began hitting Mazloum from behind and in the face. *Id.* ¶ 22 (Ex. 1).

9. According to the *Mazloum* Complaint, Persons and one or more of the off-duty police officers proceeded to drag Mazloum up a flight of stairs and out of the Nightclub onto the street. *Id.* ¶ 23 (Ex. 1). Once Persons and one or more of the off-duty police officers had removed Mazloum from the Nightclub, they allegedly dropped him in the street on his back,

351526 v 1

causing his head to strike the street. *Id.* ¶ 24 (Ex. 1).

10. Mazloum alleges that, while bleeding profusely, he tried to tell one of the off-duty police officers that he had done nothing wrong and to ask the officer why they were assaulting him. *Id.* ¶ 24 (Ex. 1). The off-duty police officer allegedly responded, "Shut up, you fucking Al-Qaeda," and kicked Mazloum. *Id.* ¶ 24 (Ex. 1).

11. According to the *Mazloum* Complaint, uniformed Metropolitan police officers arrived afterward. *Id.* ¶ 27 (Ex. 1). Persons and one of the off-duty police officers allegedly consulted with the uniformed officers in private. *Id.* ¶ 27 (Ex. 1). The uniformed officers allegedly then took Mazloum aside and began to question him. *Id.* ¶ 29 (Ex. 1).

12. After he was released by the officers, Mazloum allegedly went to the Inova Alexandria Hospital to obtain treatment for his injuries. *Id.* ¶ 32 (Ex. 1). Mazloum allegedly suffered from a broken nose, bloody left eye, scrapes on his face and ears, swelling on the left side of his neck where he was grabbed, and an assortment of cuts, bruises and bumps on his head. *Id.* ¶ 32 (Ex. 1). Mazloum allegedly also had bruises on his torso and legs, and his left knee allegedly was swollen from where he had been kicked. *Id.* ¶ 32 (Ex. 1). His wrists also were allegedly cut and abraded from where he had been handcuffed. *Id.* ¶ 32 (Ex. 1).

13. The *Mazloum* Complaint alleges that the next day, Rehman and Fiorito had a conversation with one of the off-duty police officers in which they discussed destroying the security camera films that allegedly would have shown the beating of Mazloum. *Id.* ¶ 41 (Ex. 1).

14. According to the *Mazloum* Complaint, Imad Alkadi ("Alkadi"), a friend of Mazloum's, later returned to the Nightclub and met with Fiorito. *Id.* ¶ 43 (Ex. 1). During this meeting, Fiorito allegedly was very angry and warned Alkadi to "tell your friend [Mazloum] he is going to get burned if he continues with making a claim or filing a lawsuit." *Id.* ¶ 44 (Ex. 1).

When Alkadi raised the issue of the security camera videotapes of the incident, Fiorito allegedly responded that the videotapes were "gone." *Id.* ¶ 44 (Ex. 1).

## II.   THE *MAZLOUM* ACTION

15.   On January 4, 2006, Mazloum filed his initial complaint against Defendants Night & Day, Rehman and others. Mazloum later filed a first amended complaint that also named Defendants Persons and Fiorito, among others. *See id.* (Ex. 1). Night & Day, Rehman, Persons and Fiorito are referred to collectively as the "Night & Day Defendants."

16.   Count II of the *Mazloum* Complaint asserts a purported cause of action for assault and battery against Persons and Night & Day (on the basis of *respondeat superior*). *Id.* ¶ 58-64 (Ex. 1). This count alleges that Persons "intentionally threatened harm," and "intentionally struck, beat and kicked Mr. Mazloum severely on March 11-12, 2005 at the Nightclub, causing him severe bodily injury." *Id.* ¶ 59-60 (Ex. 1). Count II further alleges that the conduct of Persons in striking, beating or kicking Mr. Mazloum was not justified or privileged," and that "Mr. Mazloum engaged in no conduct that would justify assaulting him." *Id.* ¶ 61 (Ex. 1).

17.   Count V of the *Mazloum* Complaint asserts a purported cause of action for violation of the D.C. Human Rights Act, D.C. Code §§ 2-1401.01 *et seq.* against the Night & Day Defendants. *Id.* ¶¶ 73-80 (Ex. 1). This count alleges that "[i]n singling out Mr. Mazloum for removal from the Nightclub, and then assaulting him without real danger or provocation, [the] Defendants … clearly discriminated against him on the basis of his race, appearance, perceived religion and national origin." *Id.* ¶ 76 (Ex. 1). Count V also alleges that Fiorito and Rehman "retaliated against Mr. Mazloum once they learned of his intent to initiate a formal police investigation" by warning Mazloum's friend and witness, Alkadi, not to proceed, and "took the extraordinary step of destroying the crucial videotaped evidence of the beating Mr. Mazloum experienced in order to protect Fur Nightclub and the individual Defendants from any

complaint or legal action which Mr. Mazloum might initiate." *Id.* ¶ 77, 79 (Ex. 1).

18. Count VIII of the *Mazloum* Complaint asserts a purported cause of action for reckless/negligent spoliation of evidence against Defendants Rehman, Fiorito and Night & Day (on the basis of *respondeat superior*). *Id.* ¶ 90-97 (Ex. 1). The *Mazloum* Complaint alleges that Rehman and Fiorito, "were aware as of March 12, 2005 that Mr. Mazloum had a potential civil claim against, at a minimum, [Night & Day], Persons, and [the off-duty police officers] based upon the beating of Mr. Mazloum that occurred at the Nightclub on March 11-12, 2005." *Id.* ¶ 91 (Ex. 1). Count VIII further alleges that Rehman and Fiorito "oversaw, authorized, and/or participated in the destruction of videotape evidence from security camera monitors mounted inside and outside the Nightclub that would have shown Mr. Mazloum being kicked and beaten." *Id.* ¶ 93 (Ex. 1). The *Mazloum* Complaint alleges that, "[b]ecause of the destruction of the videotaped evidence, Mr. Mazloum's ability to prove the allegations of his civil claim has been significantly impaired, as the videotape would have constituted incontrovertible proof of what had occurred both within and outside of the Nightclub[.]" *Id.* ¶ 94 (Ex. 1).

19. The *Mazloum* Complaint seeks unspecified compensatory damages for Mazloum's physical injuries, pain and suffering, medical expenses, lost earnings and the deprivation of certain rights. Mazloum also requests unspecified punitive damages. *Id.* Prayer for Relief (Ex. 1).

20. On May 9, 2006, the District of Columbia asserted a cross-claim for contribution against the Night & Day Defendants. See Answer and Cross-Claim (Docket Entry No. 44), filed in *Emile Mazloum v. District of Columbia Metropolitan Police Department, et al.* (D.D.C. Civ. A. No. 06cv00002).

21. On June 27, 2006, the court in the *Mazloum* Action dismissed Mazloum's causes

of action against the Night & Day Defendants for conspiracy to interfere with civil rights under 42 U.S.C. § 1985 (Count III) and common law conspiracy (Count VI). *See* June 27, 2006 Order at 1 (Docket Entry No. 69), filed in *Emile Mazloum v. District of Columbia Metropolitan Police Department, et al.* (D.D.C. Civ. A. No. 06cv00002). The only counts that remain pending against the Night & Day Defendants are Counts II, V and VIII.

### III.  THE POLICY

22.  Essex issued Commercial General Liability Policy No 3CK9807 to Night & Day for the policy period August 26, 2004 to August 26, 2005 (the "Policy"). The Policy affords coverage of $1 million per occurrence and a $2 million aggregate limit for general liability and a $1 million limit for products liability, completed operations liability, and personal and advertising injury liability, subject to a $1,000 deductible. *See* Policy, Declarations Page; Deductible Endorsement (Ex. 2).

23.  The Policy extends coverage to the named insured, Night & Day, as well as its members, managers and employees. *See* Policy, Declarations Page, Item 1; §§ II.1.c, II.2.a (Ex. 2).

24.  The Policy, subject to all of its terms and conditions, provides that Essex

> will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Essex] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [Essex] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Policy § I.1.a (Ex. 2).

#### A.  Defined Terms in the Policy

25.  The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See* Policy, § V.13 (Ex. 2).

26.     The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *See* Policy, § V.3. (Ex. 2).

27.     The Policy defines "property damage" as:

a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*See* Policy, §V.17 (Ex. 2).

28.     The Policy provides that

This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"[.]

*See* Policy, § I.b (as modified by Known Injury or Damage Endorsement) (Ex. 2).

### B.     The Intentional Acts Exclusion

29.     The Policy provides that

This insurance does not apply to:

**a.     Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

*See* Policy, § I.2.a (as modified by Assault and/or Battery Exclusion) (Ex. 2).

### C.     The Assault and/or Battery Exclusions

30.     The Policy provides, by endorsement, that

[t]he coverage under this policy does not apply to any claim, suit, cost or expense arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person.

*See* Policy, Assault and/or Battery Exclusion Endorsement (Endorsement Form M/E-024 (9/00))

(Ex. 2).

31. The Policy also provides, by endorsement, that

> The coverage under this policy does not apply to [claims] arising out of … Assault and/or Battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person ….

*See* Restaurant, Bar, Tavern, Night Clubs, Fraternal and Social Clubs Endorsement § 4 (Ex. __).

### D. The Discrimination Exclusion

32. The Policy provides, by endorsement, that

> [d]iscrimination charges, of any kind, actual and alleged, are not covered under the policy, nor are expenses or obligation to share damages with or repay another whom must pay from same.

*See* Combination General Endorsement § 7 (Ex. 2).

### E. The Owned Property Exclusion

33. The Policy further provides that

> This insurance does not apply to:
>
>    *    *    *
>
> **j.   Damage to Property**
>
> "Property damage" to"
>
>    (1) Property you own, rent or occupy.
>
>    *    *    *
>
>    (2) Personal property in the care, custody or control of the insured[.]

*See* Policy, § I.2.j (Ex. 2).

### F. The Punitive Damages Exclusion

34. The Policy provides, by endorsement, that

> [p]unitive or [e]xemplary [d]amages [are] not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same.

- 8 -

351526 v 1

*See* Combination General Endorsement § 6 (Ex. 2).

## IV.    THE COVERAGE DISPUTE

35.    The Night & Day Defendants tendered the *Mazloum* Action to Essex. Essex agreed to provide a defense to the Night & Day Defendants, subject to a reservation of the right to later deny coverage and to file a declaratory judgment action.

36.    Essex filed this coverage action on July 19, 2006.

Respectfully submitted,

Dated: April 2, 2007

By: /s/ Benjamin C. Eggert /s/
Sean M. Hanifin, D.C. Bar No. 358347
Benjamin C. Eggert, D.C. Bar No. 474218
ROSS, DIXON & BELL, LLP
2001 K Street, N.W.
Washington, D.C. 20006-1040
Telephone: (202) 662-2000
Facsimile: (202) 662-2190

*Attorneys for Plaintiff
Essex Insurance Company*

351526 v 1

## CERTIFICATE OF SERVICE

    I hereby certify that on this 2nd day of April 2007, a copy of the foregoing Essex Insurance Company's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment was filed electronically with the Clerk of the Court using the CM/ECF system, which will send electronic notice of such filing to the following counsel of record:

    Patrick Kearney, Esq.
    Selzer Gurvitch Rabin & Obecny, Chartered
    4416 East West Highway, Fourth Floor
    Bethesda, MD 20814

    David B. Stratton, Esq.
    Jordan Coyne & Savits, L.L.P.
    1100 Connecticut Avenue, N.W., Suite 600
    Washington, D.C. 20036

        /s/ Benjamin C. Eggert /s/
        Sean M. Hanifin