UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESSEX INSURANCE COMPANY )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NIGHT & DAY MANAGEMENT, LLC, )<br>  et al., )<br>)<br>Defendants. ) | Civil Action No. 1:06cv1280 |

DEFENDANTS MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT

The Defendants, by and through the undersigned counsel, submit the following Memorandum of Points and Authorities in Opposition to Plaintiff's motion for summary judgment, and in favor of Defendants' cross motion for partial summary judgment on the duty to defend, and state as follows:

**A. Introduction**

In the underlying action, Plaintiff Mazloum has filed a First Amended Complaint which raises claims including 42 U.S.C. secs. 1981, 1983, and 1985; the D.C. Human Rights Act, D.C. Code secs. 2-1401.01 et seq., as well as the common law of assault and battery, negligence, civil conspiracy, reckless/negligent spoliation of evidence, aiding and abetting the spoliation of evidence, and respondeat superior.

Mr. Mozloum alleges that he "was the victim of a vicious beating perpetrated by off-duty

D.C. [police officers] . . . in conjunction with the existing security detail at the FUR Nightclub in Washington, D.C." First Amended Complaint, ¶ 2.

He alleges that Officers Ramirez, Modlin, Phillips, and Schneider took it upon themselves to arrest and eject him from the nightclub owned and operated by Night and Day. *Id*. In so doing, he alleges that these officers employed excessive and unnecessary force, while identifying themselves as police officers. *Id*. In the process, Mr. Mazloum's ethnic background was disparaged. *Id*.

He alleges that as a result of all the actions detailed in the First Amended Complaint, he has suffered serious physical and emotional injuries, has incurred medical expense and loss of earnings, and his constitutional and statutory and common law rights have been violated. *Id*., at ¶ 4.

Defendant Night and Day owns and operates the FUR Nightclub. First Amended Complaint, ¶ 9. It is alleged that Defendant Michael Persons was at all relevant times employed as a bouncer at FUR Nightclub. *Id*., at ¶ 11. Michael Rehman and John Fiorito are managers of FUR Nightclub. *Id*., at ¶ 13. The First Amended Complaint alleges that all actions by Defendants Persons, Rehman and Fiorito were within the scope of their employment, or in the alternative, were ratified by their employer, Night and Day Management, LLC. *Id.*, ¶ 46.

In the First Amended Complaint, Mr. Mozloum alleges that late on March 11 or early on March 12, 2005, he was dancing on stage at The Fur Club, and then tried to go down stairs. Someone grabbed him from behind. Mr. Mozloum alleges that he had no idea who it was. *Id*., ¶ 18. It is alleged that a friend of Mr. Mozloum's, called Mr. Alkadi, saw Defendant Person grab Mr. Mozloum, and tried to intercede on Mazloum's behalf. *Id*., ¶ 19. "As Persons was taking

Mr. Mazloum down the stairs from the stage, Mr. Alkadi and Persons bumped into each other and all three fell to the floor." *Id.*, ¶ 19.  There are allegations of a scuffle on the floor.

Four off duty cops -- Officers Ramirez, Modlin, Phillips and Schneider -- who were club patrons, interceded in the incident, and handcuffed Mr. Mazloum. *Id.*, ¶ 20.  It is alleged that while Mr. Mazloum was on the floor, Officer Ramirez and Mr. Persons began hitting him from behind, and then punched him in the face. *Id.*, ¶ 22.

The off-duty officers dragged Mazloum outside. *Id.*, ¶ 23.  It is alleged that the officers used excessive force outside to control Mr. Mazloum. *Id.*, ¶ 25.

On the afternoon of Saturday, March 12, 2005, Mr. Mazloum and his friends went to the 1st District police headquarters to formally file a complaint. *Id.*, ¶ 35.  After Mr. Mazloum and friends left the 1st District station, Officer Ramirez allegedly called the managers of the nightclub, told them what had transpired, and discussed with them the importance of destroying the security camera films which would show the beating of Mr. Mazloum. *Id.*, ¶ 41.

On the night of Saturday, March 12, 2005, Mr. Fiorito and Mr. Rehman meet with Mr. Alkadi at the nightclub.  Mr. Persons also was allegedly present.  There is no allegation that Mr. Mozloum was at that meeting.  The men met in an office which also doubled as a security center. *Id.*, ¶ 43.  It is alleged that Mr. Fiorito said to Mr. Alkadi, in response to Alkadi's reference to the security videos, that "everything is gone" as far as the film from the security cameras was concerned. *Id.*, ¶ 44.

The First Amended Complaint contains a number of counts, which may be summarized as follows:

Count I -- 42 U.S.C. sec. 1983 as against Ramirez, Modlin, Phillips, Schneider, Acosta,

Smith, and D.C.;

Count II -- Assault and Battery as against Ramirez, Persons, Modlin, Phillips, Schneider, D.C., and FUR Nightclub;

Count III -- Conspiracy to interfere with civil rights (42 U.S.C. sec. 1985) as against Ramirez, Persons, Acosta, Smith, Fiorito, Rehman, Night & Day, and D.C.  (This Count has been dismissed at to all defendants by the Court.);

Count IV -- Racial Discrimination  42 U.S.C. sec. 1981 as against DC, Ramirez, Modlin, Phillips and Schneider;

Count V – D.C. Human Rights Act (D.C. Code secs 2-1401.01 as against all defendants);

Count VI  – Common Law Conspiracy as against Ramirez, Persons, Acosta, Smith, Fiorito, Rehman, Night & Day, and D.C. (Dismissed as against all defendants by the Court);

Count VII -- Negligence, as against the District of Columbia;

Count VIII -- Reckless/Negligent Spoliation of Evidence (as against Defendants Rehman, The Nightclub, and Fiorito); and

Count IX -- Aiding and abetting spoliation of evidence, as against Ramirez.

In addition, the District of Columbia filed a Cross-Claim against Night and Day, Rehman, Fiorito, and Persons.  The Cross-Claim incorporates the First Amended Complaint by reference, and seeks contribution or indemnification for any liability to the District under the First Amended Complaint.

Further facts are set forth in the accompanying Statement of Undisputed Material Facts, which is incorporated herein by reference.

### B. Choice of law

In the District of Columbia, the law of the state with the "most significant relationship" or interest as to the particular issue involved will apply to provide the substantive rule of decision. See Estrada v. Potomac Electric Power Company, 488 A.2d 1359, 1361 (D.C. 1985). The courts of the District of Columbia have adopted the principles set forth in the Restatement (Second), Conflict of Laws, Section 145, which requires a balancing of relevant factors to determine which jurisdiction has the greatest interest in the issue. Although the Essex policy was issued and delivered in Maryland, the policy insured a nightclub in the District of Columbia, all events relating to the occurrence took place in the District of Columbia, and the other defendants in the underlying suit include District of Columbia police officers and the District of Columbia itself. Clearly, the District of Columbia has the greatest interest in the performance of the contract of insurance.

### C. Relevant Policy Language

Essex Policy No. 3CK9807 was issued to Night & Day Management, LLC for the policy period of 08/26/2004 to 08/26/2005. It was issued by All Risks, Ltd., which is located in Hunt Valley, Md, and was delivered to Night & Day at an address in Rockville, Md.

The Policy is a Commercial General Liability Policy and has general aggregate limits of $2,000,000, and a per occurrence limit of $1,000,000. There is a deductible of $1000.00 per claim.

The main insuring agreement under Coverage A states in pertinent part that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit"

> seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
>
> . . . .
>
> This insurance applies to "bodily injury" and "property damage" only if
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
> (2) The "bodily injury" or "property damage" occurs during the policy period.

The Policy contains a number of pertinent exclusions, including the following:

> This insurance does not apply to:
>
> a. Expected or intended injury
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
>
> . . . .
>
> j. Damage To Property
>
> > "Property damage" to:
> >
> > > (1) Property you own, rent, or occupy;
> > >
> > > . . . .

The Policy also contains a number of relevant definitions. These include the following:

> 17. "Property damage" means:
>
> > a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> >
> > b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that

caused it.

The Policy has a number of relevant amendments.

### COMBINATION GENERAL ENDORSEMENT

6. Punitive or Exemplary Damages is not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same. . . .

7. Discrimination charges, of any kind, actual and alleged, are not covered under this policy, nor any expenses or obligation to share damages with or repay another whom must repay from same.

. . . .

### ASSAULT AND/OR BATTERY EXCLUSION

The coverage under this policy does not apply to any claim, suit, cost or expense arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person. Nor does this insurance apply with respect to any charges or allegations of negligent hiring, training, placement or supervision. Furthermore, assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property. The sentence "This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property' is deleted from the Commercial General Liability Coverage Form, Section I, Item 2, Exclusions, a.

### RESTAURANT, BAR, TAVERN, NIGHT CLUBS, FRATERNAL AND SOCIAL CLUBS ENDORSEMENT

The coverage under this policy does not apply to "bodily injury", "property damage", "personal injury", "advertising injury", or any injury, loss or damage arising out of:

. . .

      4. Assault and/or Battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person. Furthermore, assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property. The sentence "This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property" is deleted from the Commercial General Liability Coverage Form, Section I, Item 2, Exclusions, a.

      . . . .

      6. Any charges or allegations of negligent hiring, employment, training, placement or supervision, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same covered in this policy.

    **D. The duty to defend is determined based on the "eight corners rule"**

"The phraseology of contracts of insurance is that chosen by the insurer and the contract in fixed form is tendered to the prospective policyholder who is often without technical training, and who rarely accepts it with a lawyer at his elbow." *Pennsylvania Indem. Fire Corp. v. Aldridge*, 73 App. D.C. 161, 162, 117 F.2d 774, 775 (1941) *(quoting Aschenbrenner v. United States Fid. & Guar. Co.*, 292 U.S. 80, 84, 78 L. Ed. 1137, 54 S. Ct. 590 (1934)). In recognition of these realities, ambiguities in an insurance policy are construed against the insurer and in favor of "the reasonable expectations of the purchaser of the policy." *Smalls v. State Farm Mut. Auto. Ins. Co.*, 678 A.2d 32, 35 (D.C. 1996). "The general rule applicable in the interpretation of an insurance policy is that, if its language is reasonably open to two constructions, the one most favorable to the insured will be adopted. Any fair doubt as to the meaning of its own words should be resolved against the insurer." *Aldridge*, 73 App. D.C. at 162, 117 F.2d at 775.

    Under District of Columbia law, the courts must interpret an insurance policy

objectively, based on the language of the policy and the expectations that the insured reasonably could have formed on the basis of that language. *American Red Cross v. Travelers Indem. Co.*, 816 F.Supp. 755, 758 (D.D.C. 1993). In determining the "objectively reasonable" reading of the policy, the Court must give effect to the policy's dominant purpose of indemnity. *Id*. If the policy language is unambiguous, the Court must apply the plain meaning of the language used and should not consider extrinsic evidence as to how to interpret the policy. *Id*. If the policy is ambiguous, the Court may consider evidence of usages and customs affecting the agreement to determine the parties' intent. *Id*. Any ambiguity in the insurance contract must be construed in favor of the insured. *Id*. Whether language in a contract is genuinely ambiguous is a question of law. The Court must follow the guideline that, "unless it is obvious that words which appear in an insurance contract are intended to be used in a technical connotation, they will be given the meaning which common speech imports." *Aldridge*, 73 App. D.C. at 162, 117 F.2d at 775. Policy language is not genuinely ambiguous unless "it is susceptible of more than one reasonable interpretation." *American Bldg. Maint. Co. v. L'Enfant Plaza Prop., Inc.*, 655 A.2d 858, 861 (D.C. 1995) (emphasis added).

Under D.C. law, if the language of an insurance policy is ambiguous, the contract is construed to favor the insured. *Bernstein v. North East Ins. Co.*, 19 F.3d 1456 (D.C. Cir. 1994); *John Akridge Co. v. Travelers Companies*, 876 F.Supp. 1 (D.D.C. 1995).

Under D.C. law, an insurer has a duty to spell out in the plainest terms any exclusionary or delimitating policy provisions. *Potomac Elec. Power Co. v. California Union Ins. Co.*, 777 F. Supp. 968 (D.D.C. 1991); *American Ins. Co. v. Tutt*, 314 A.2d 481 (D.C. 1974); *Nationwide Mut. Ins. Co. v. Shilansky*, 176 A.2d 786 (D.C.Mun. App. 1962). Exclusionary language in an

insurance policy must be strictly construed and given any reasonable interpretation that favors coverage. *See, e.g. Continental Cas. Co. v. Cole*, 809 F.2d 891, 895 (D.C. Cir. 1987). The insurer has the burden of proving the applicability of a policy exclusion. *See Chicago Title Ins. Co. v. Resolution Trust Corp.*, 53 F.3d 899, 905 (8th Cir. 1995); *see also Nat'l Elec. Mfrs. Ass'n v. Gulf Underwriters Ins. Co.*, 162 F.3d 821, 824 (4th Cir. 1998)(*citing Washington Sports & Ent't, Inc. v. United Coastal Ins. Co.*, 7 F.Supp. 2d 1, 7 (D.D.C. 1998).

In *Stevens v. United General Title Insurance Co.*, 801 A.2d 61 (D.C. 2002), the Court recently reaffirmed the District of Columbia's adherence to the "eight corners rule," requiring a comparison of the complaint with the insurance policy to determine the existence of a duty to defend. "Under [the 'eight corners rule'], an insurer's duty to defend is determined by comparing the complaint . . . with the policy. If the facts alleged in the complaint . . . would give rise to liability under the policy if proven, the insurer must defend the insured." *Id.*

The scope of an insurer's duty to defend an action against its insured, as distinguished from its obligation to indemnify the insured for any resulting judgment, is:

> to be determined by the allegations of the complaint. This obligation is not affected by facts ascertained before suit or developed in the process of litigation or by the ultimate outcome of the suit. If the allegations of the complaint state a cause of action within the coverage of the policy, the insurance company must defend. On the other hand, if the complaint alleges a liability not within the coverage of the policy, the insurance company is not required to defend. In case of doubt such doubt ought to be resolved in the insured's favor.

*I.J.G. v. Penn-America Ins. Co.*, 803 A.2d 430 (D.C. 2002); *Boyle v. National Casualty Co.*, 84 A.2d 614, 615-616 (D.C. 1951)(footnotes omitted); *accord, e.g., Beltway Management Co. v. Lexington-Landmark Insurance Co.*, 746 F.Supp. 1145, 1149 (D.D.C. 1990); *Central Armature Works, Inc. v. American Motorists Insurance Co.*, 520 F. Supp. 283, 287 (D.D.C. 1980);

*Washington v. State Farm Fire & Casualty Co.*, 629 A.2d 24, 25-26 (D.C. 1993); *Western Exterminating Co. v. Hartford Accident & Indemnity Co.*, 479 A.2d 872, 874 (D.C. 1984); *S. Freedman & Sons, Inc. v. Hartford Fire Insurance Co.*, 396 A.2d 195, 197 (D.C. 1978).

Like other jurisdictions, the District of Columbia follows the principle that the duty to defend is broader and more extensive than the duty to indemnify. *See Salus Corp. v. Continental Cas. Co.*, 478 A.2d 1067, 1069-70 (D.C. 1984). Any doubt as to whether there is a duty to defend must be resolved in favor of the insured. *See Washington v. State Farm Fire & Cas. Co.,* 629 A.2d 24, 26 (D.C. 1993).

### E. Under the "eight corners rule", Essex has a duty to defend the Mazloum action

The allegations in the *Mazloum* action raise the possibility of coverage, when examined for all plausible claims encompassed within the First Amended Complaint and the Cross-claim. Essex Insurance Company therefore has the duty to defend.

Count VIII alleges reckless/negligent spoliation of evidence. It is not necessary for this cause of action that there be any showing of intent. In *Holmes v. Amerex Rent-A-Car*, 710 A.2d 846 (D.C. 1998), *answer to certified question conformed to*, 180 F.3d 294 (D.C. Cir. 1999), the court recognized an independent tort of negligent spoliation of evidence. Intent is not a necessary element of the cause of action as defined by the D.C. Court of Appeals; indeed, the District of Columbia has not even recognized the tort of intentional spoliation of evidence yet.[1] The elements of a cause of action for negligent or reckless spoliation of evidence are: (1)

---

[1] The court in *Nix v. Hoke*, 139 F. Supp. 2d 125 (D.D.C. 2001) (applying District of Columbia law), noted that the D.C. Court of Appeals has only recognized a cause of action for negligent or reckless spoliation of evidence, citing Holmes v. Amerex Rent-A-Car, 710 A.2d 846 (D.C. 1998), answer to certified question conformed to, 180 F.3d 294 (D.C. Cir. 1999), but has not recognized an action for intentional spoliation.

existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to that action; (3) destruction of that evidence by the duty-bound defendant; (4) significant impairment in the ability to prove the potential civil action; (5) a proximate relationship between the impairment of the underlying suit and the unavailability of the destroyed evidence; (6) a significant possibility of success of the potential civil action if the evidence were available; and (7) damages adjusted for the estimated likelihood of success in the potential civil action. *Id*. The proof of this cause of action includes a showing that the defendant's action proximately caused some level of impairment in the plaintiff's ability to prove an existing underlying civil claim. *Id*., at 851. In other words, it based in part on a showing of damage from the loss of use of the despoiled evidence.

The negligent spoliation count thus states a claim within the main insuring clause under Coverage A. It is sufficient for the cause of action that the evidence was destroyed through neglect, inadvertence, mistake, or recklessness. The First Amended Complaint alleges that as a result of all the causes of action, including the destruction of critical evidence, Mr. Mazloum has suffered serious physical and emotional injuries. See, e.g., First Amended Complaint, at ¶ 4. Thus, there is a claim for bodily injury.

Further, the spoliation count alleges damages due to the alleged destruction of videotape evidence and Mazloum's loss of use of that tangible property, which constitutes "property damage" as defined by the Policy. The Policy defines "Property damage" to mean:

    a. Physical injury to tangible property, including all resulting loss of use of that property. . . ; or

    b. Loss of use of tangible property that is not physically injured. . . .

Policy, Form CG 00 01 07 98, page 13.  Physical injury to tangible property means damage to property that can be touched.  See 2 Allan D. Windt, Insurance Claims & Disputes 184 (3d ed. 1995).  Loss of use of computer code has been held to constitute "tangible property."  See Retail Systems, Inc. v. CNA Ins. Co., 469 N.W.2d 735 (Minn. App. 1991).  Loss of use is the "physical inability" to use the property.  See Windt, at 185.  In the spoliation of evidence claim at bar, the tort plaintiff alleges that he is physically unable to use the lost or destroyed videotape evidence.  The damages at issue are not merely interference with a property or beneficial right in a cause of action.  Rather, the plaintiff's alleged damages are the inability to use tangible property, and the consequential damages from that loss of use.

     Exclusion J.(1) would exclude the value of the allegedly destroyed video itself, as property owned by the insured.  But here, there is no such claim.  Exclusion J.(1) does not exclude consequential damage to the rights of others that results from or follows from the loss of use of the insured's property.  Here, Mazloum's claim for damages is not for the value of the video itself, but for loss of use of the videotape in his civil suit.

     Essex's declaratory judgment complaint alleges that damage to property is excluded by Exclusion J.(1) merely if the alleged damages "relate to" property damage owned by the insured.  Similarly, Essex's motion for summary judgment argues that Exclusion J.(1) applies because the spoliation claim is "based on the destruction of property owned by Night & Day . . . ."  Essex Memorandum, at p. 16.  However, the plain language of Exclusion J.(1) does not include the words "relate to" or "based on."  Under District of Columbia law, it is the insurer's duty to spell out in plainest terms - terms understandable to the man in the street - any exclusionary or delimiting policy provisions.  If Essex had intended that Exclusion J.(1) exclude not only

damage to property owned or rented by the insured, but also any damage to others "relating to" or "based on" damage to the insured's own property, it should have included such terms.

Nor do the Assault and/or Battery Exclusions operate to exclude any possibility of coverage for the negligent spoliation claim. The alleged negligent spoliation claim concerns events that, according to the First Amended Complaint, were (1) at minimum almost a day after the alleged assault, (2) which allegedly involved Night and Day managers who had no direct involvement in the alleged assault, and (3) involved events in which the claimant himself was not even present. Further, there is a potentiality that none of the Night & Day defendants will be found liable for any assault or battery of Mozloum, and that Night & Day's liability, if any, will rest solely on the negligent spoliation of evidence count. Thus it cannot be said that Count VIII is inextricably connected to the alleged assault and battery.

In *Sigmund v. Progressive Northern Ins. Co.*, 374 F. Supp. 2d 33 (D.D.C. 2005), the Court construed the phrase "arising out of" in the context of the main insuring grant of an automobile policy's uninsured motorist coverage. The Court concluded there that "arising out of" requires a direct causal connection, and a "sufficient nexus", and that a mere incidental connection would not suffice. Id., 374 F.Supp.2d at 38. The use of the phrase "arising out of" in a policy exclusion must be accorded a narrower meaning than in a policy's main insuring clause, as exclusions are construed narrowly in favor of coverage, and all doubts must be resolved in favor of the insured.

In *Interstate Fire & Casualty Co., Inc. v. 1218 Wisconsin, Inc.*, 136 F.3d 830 (D.C. Cir. 1998), the D.C. Circuit reasoned that the claim that a bar had negligently failed to protect the victim from an assault was not contingent upon either the bar's causing or contributing to the

attacker's intoxication or on its furnishing alcoholic beverages to a person under the influence of alcohol. Therefore, notwithstanding the liquor liability exclusion in the policy, Interstate had a duty to defend the bar against the victim's allegations that the bar's security personnel had failed to halt the alcohol-induced attack.

Although not a D.C. case, the reasoning of *Bucci v. Essex Insurance Co.*, 287 F. Supp. 2d 75 (D. Me. 2003), is persuasive here. In *Bucci*, Essex was found to have a duty to defend based on similar facts. The plaintiff in *Bucci* had filed a complaint against a nightclub named "The Industry", alleging claims against The Industry in connection with an assault at the nightclub, and the nightclub's conduct before, during, and after the assault. *Id.*, at 76. The claimant had been assaulted while waiting in line at the nightclub. The claimant alleged that the nightclub failed to take reasonable measures to prevent the assault, or to assist the claimant. Further, the claimant alleged that agents and employees of the nightclub assisted the assailant by telling him to run inside the nightclub to evade the police, and that agents and employees hid the assailant in the nightclub. The claimant also alleged that the agents and employees of the nightclub hampered the police investigation by giving false or misleading statements to the officers. Id. The complaint included claims for negligence, negligent security, negligent supervision and training, negligent infliction of emotional distress, concert of action, spoliation of evidence, and punitive damages. Maine, like the District of Columbia, uses a pleading comparison test to determine whether there is a duty to defend.

The trial court, construing a similar Assault and/or Battery Exclusion that was part of the Essex policy, held that there was a duty to defend. The court in *Bucci* reasoned as follows:

> With respect to this exclusion, the Court will not construe claims "arising out of assault and/or battery" to include claims for bodily injury resulting from conduct

> that occurs after the commission of the alleged assault. The language of the exclusion itself weighs against such a reading because the exclusion specifically addresses claims arising out of acts or omissions taken in connection with the prevention or suppression of an assault and/or battery. If claims arising out of the prevention and suppression of an assault are not encompassed by the phrase "arising out of the assault and/or battery" and thus require specific mention in the exclusion, then there is no apparent reason for the Court to construe that phrase to encompass claims for conduct after an assault has ceased. Further, to the extent that the meaning of "suppression" is ambiguous, the Court construes it narrowly to include acts or omissions in connection with the termination of the assault once it has commenced and will not interpret it to include acts of omissions that occur after the assault has ceased.

*Id.*, at 79. The court concluded that because it was possible that the facts at trial could have established coverage under the policy with respect to the nightclub's conduct after the alleged assault had ceased, Essex had a duty to defend. *Id*. The trial court subsequently denied Essex's motion for reconsideration regarding the duty to defend. *Bucci v. Essex Ins. Co.*, 323 F.Supp.2d 84 (D. Me. 2004). Essex appealed from the award on breach of its duty to defend. In *Bucci v. Essex Insurance Co.*, 393 F.3d 285, 291 (1st Cir. 2005), the First Circuit rejected Essex's argument that the phrase "arising out of assault and/or battery" should be read broadly, using a "but for" test, and affirmed the district court's judgment.

The Discrimination Exclusion by its plain language does not apply to exclude a charge of negligent spoliation of evidence. Essex argues that because the complaint alleges that the Night and Day defendants were motivated by a discriminatory animus to destroy the videotape evidence, the discrimination exclusion therefore applies. However, it is possible that the facts at trial would not support any finding of discrimination, but may support negligent spoliation. An intent to discriminate is not an element of negligent spoliation of evidence. The loss or destruction of the evidence need only be negligent or reckless. Therefore, there is a potentiality of coverage, notwithstanding the manner in which the complaint is drafted. As the Court stated

in *American Continental Ins. Co. v. Pooya*, 666 A.2d 1193 (D.C. 1995),

> [W]e reject [the insurer's] contention that we look solely to the literal wording of the complaint and thereby disregard claims that clearly are included within the alleged causes of action. Rather, we conclude that it is appropriate to examine the complaint for all plausible claims encompassed within the complaint and to ascertain whether the allegations of the complaint state a cause of action within the policy coverage and give fair notice to the insurer that the insured is being sued upon an occurrence which gives rise to a duty to defend under the terms of the policy.

*Id*., at 1198. The Court also noted that strict application of the insurer's position arguably would inappropriately narrow an insurer's duty to defend. "For example, the insertion by plaintiff's counsel of the terms 'maliciously or intentionally' in any complaint alone would eliminate a duty to defend under a policy such as the one at issue here." Id., 1198 at n. 8. For the same reasons, in the case at bar, Count VIII's incorporation by reference of all prior paragraphs of the First Amended Complaint, including discrimination claims, does not automatically mean that any potential for coverage is excluded by the Discrimination Exclusion.

Finally, the First Amended Complaint alleges that Mr. Alkadi tried to intercede on Mazloum's behalf, and then "As Persons was taking Mr. Mazloum down the stairs from the stage, Mr. Alkadi and Persons bumped into each other and all three fell to the floor." First Amended Complaint, ¶ 19. By itself, the allegation that Mr. Alkadi and Mr. Persons "bumped into each other and all three fell to the floor," while Mr. Persons was "taking" Mr. Mazloum down a set of stairs, clearly encompasses a claim of negligence. At that point, the off-duty D.C. police officers saw the three men on the floor and took action. In Count VII of the First Amended Complaint, it is alleged that the District of Columbia was negligent in training and supervising the police officers as to the use of excessive force, and how and when to avoid the use of force and excessive force. In the District of Columbia's cross-claim against the Night and

Day Defendants, the District of Columbia incorporates the First Amended Complaint, and seeks contribution or indemnification for any liability to the District under the First Amended Complaint. Thus, there is a potential under the First Amended Complaint that the District of Columbia could be liable only under Count VII, for negligence, and that the District of Columbia could recover contribution from Night and Day for the alleged negligence which caused the three men to fall to the floor, starting a chain of events that lead to the actions of the police officers. This potentiality also gives rise to Essex's duty to defend, under *Pooya*.

### F. Conclusion

For all of the foregoing reasons, the Defendants respectfully request that this Court deny Plaintiff Essex Insurance Company's motion for summary judgment on the duty to defend; that the Court enter partial summary judgment in favor of the Defendants to the effect that Essex Insurance Company has a duty to defend the Mazloum action; and that the Court award the Defendants their reasonable attorney's fees and costs for defending the declaratory judgment action on coverage to date.

Respectfully submitted,

JORDAN COYNE & SAVITS L.L.P.

By: _____/s/_____
David B. Stratton, Esq. # 413358
1100 Connecticut Ave., N.W.
Suite 600
Washington, D.C. 20036
(202) 296-4747
Fax: (202) 496-2800
Attorneys for Defendants