UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ESSEX INSURANCE CO.,

    Plaintiff,

    v.

NIGHT & DAY MANAGEMENT, LLC, et al,

    Defendants.

Civil Action No. 06-1280 (JDB)

## MEMORANDUM OPINION

This insurance coverage dispute involves the same underlying incident that forms the factual basis of Mazloum v. District of Columbia, 522 F. Supp. 2d 24 (D.D.C. 2007). Plaintiff Essex Insurance Co. brings suit seeking a declaratory judgment that it is not responsible for covering any of defendants'[1] putative liability arising from the Mazolum action pursuant to the insurance policy between the two parties. Essex has moved for summary judgment in its favor. Defendants, for their part, have cross-moved for summary judgment and requested that this Court order Essex to defend the FUR nightclub in the Mazloum action.[2] Those motions are now fully briefed and ripe for resolution. Upon careful consideration, and for the reasons set forth below, the Court will grant plaintiff's motion and deny defendants' motion.

---

[1] The defendants are Night & Day Management, LLC ("Night & Day"), owner of the FUR nightclub, and its employees Michael Rehman, Michael Persons, and John Fiorito.

[2] Plaintiff is correct that defendants' cross-motion for summary judgment is not timely pursuant to the scheduling order entered on October 24, 2006. Defendants evidently first thought to cross-move for summary judgment while preparing to oppose plaintiff's motion for summary judgment; that is, after the deadline for filing dispositive motions had expired. That untimeliness, however, is of no consequence to this case. Whether viewed as an opposition or a cross-motion, defendants' efforts are ultimately unsuccessful here.

## BACKGROUND

The circumstances of the underlying incident in this case are set out in detail in Mazloum, 522 F. Supp. 2d at 30-32, and will not be repeated at length here. For present purposes, it suffices to say that Emile Mazloum, a person of "Arabian ethnicity," alleges that he was the victim of a beating at defendants' nightclub on the evening of March 11-12, 2005.[3] Pl.'s Stmt. of Facts ¶¶ 1-10. As Mazloum would have it, after dancing on the stage at the club, he attempted to "descend[] a stairway from the stage" when -- upon no provocation on his part -- he was grabbed and assaulted by Michael Persons, a bouncer employed by Night & Day. Id. ¶¶ 4-10. The resulting skirmish drew the attention of several off-duty Metropolitan Police Department officers who were patrons at the FUR nightclub on that evening. Those officers intervened on Persons's behalf, allegedly assaulting Mazloum, employing excessive force to remove him from the nightclub and launching racial epithets at him in the process. Id. ¶¶ 7-11.

As a result of the beating supposedly administered by Persons and the off-duty officers, Mazloum "suffered a broken nose, bloody left eye, scrapes on his face and ears, swelling on the left side of his neck where he was grabbed, and an assortment of cuts, bruises and bumps on his head," all of which required medical attention at Inova Alexandria Hospital. Id. ¶ 12. The next

---

[3] Following District of Columbia law, defendants correctly point out that "an insurer's duty to defend is determined by comparing the complaint . . . with the policy. If the facts alleged in the complaint . . . would give rise to liability under the policy if proven, the insurer must defend the insured." Defs.' Opp'n at 10 (quoting Stevens v. United General Title Ins. Co., 801 A.2d 61, 66 n.4 (D.C. 2002) (internal citations omitted)). The District follows the so-called "eight-corners rule," which "focuses solely on the documents at issue; facts outside the complaint and insurance policy are irrelevant." Am. Registry of Pathology v. Ohio Cas. Ins., 461 F. Supp. 2d 61, 67 (D.D.C. 2006). Thus, even though this case is at the summary judgment phase, the operative facts are drawn primarily from the complaint in the Mazloum proceedings. The parties do not dispute the import of Mazloum's complaint.

day, after Mazloum filed an administrative report with the MPD, defendants Rehman and Fiorito allegedly "had a conversation with one of the off-duty police officers in which they discussed destroying the security camera films that allegedly would have shown the beating of Mazloum." Id. ¶ 13.  Along those same lines, Fiorito met with Mazloum's friend, Imad Alkadi, that evening and warned him that Mazloum would "get burned" if he continued to prosecute his police report and that the videotapes that might have recorded the incident were "gone."  Id. ¶ 14.

Mazloum initiated his civil action on January 4, 2006.  In his first amended complaint, he asserted a claim of assault and battery against Persons and Night & Day under the principle of *respondeat superior*.  He also added a discrimination claim premised upon the D.C. Human Rights Act ("DCHRA") against Night & Day, claiming that he was singled out for abusive treatment on account of his ethnicity.  Moreover, Mazloum asserted a DCHRA retaliation claim against Night & Day for threatening Mazloum's friend and for purportedly destroying the videotape evidence in response to Mazloum filing his police report.  Finally, Mazloum asserted a claim of reckless/negligent spoliation of evidence against defendants Night & Day, Rehman and Fiorito in connection with the alleged destruction of the videotape.  Mazloum requested compensatory and punitive damages for his injuries.

Essex issued a "Commercial General Liability Policy" (hereinafter "Policy") to Night & Day covering the period of August 26, 2004 through August 26, 2005, which encompasses the date of the Mazloum incident.  Id. ¶ 22.  There are several provisions of that contract relevant to the inquiry here.  To begin with, the Policy provides that Essex will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  Pl.'s Mot. Eggert Decl. Ex. 2 at 17 (emphasis added).

A variety of general exclusions within the Policy itself and specified "endorsements" clarify the scope to which the Policy "applies." The first significant exclusion concerns actions that cause "'[b]odily injury' or 'property damage[s]'" that are "expected or <u>intended</u> from the standpoint of the insured." Id. (emphasis added). More specifically, the "Assault and/or Battery Exclusion" makes plain that:

> The coverage under this policy does not apply to any claim, suit, cost or expense arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person.

Id. at 37. Similarly, the "Combination General Endorsement" excludes from coverage punitive damages as well as any liability arising from discrimination claims. Id. at 33 § 6 (punitive damages), § 7 (discrimination claims). Finally, the Policy specifically excludes from coverage damages to property "own[ed], rent[ed], or occup[ied]" by the insured or property "in the case, custody or control of the insured." Id. at 20.

Against that backdrop, Essex moved for summary judgment on the grounds that all of Mazloum's claims against defendants fall outside of the Policy's coverage because they amount to actions or damages that are specifically exempted by an applicable exclusion or endorsement. In fact, as plaintiff correctly points out, defendants do not dispute the bulk of plaintiff's arguments. Instead, defendants direct most of their effort towards establishing that the spoliation claim is covered by the Policy. And based upon that premise, defendants argue that "[i]t is black letter law that if a complaint states a claim within the policy's coverage, the insurer is obligated to accept defense of the entire lawsuit even though the other claims in the complaint are outside of the policy's coverage." Defs.' Reply at 1. Thus, defendants effectively argue that Mazloum's spoliation claim is the hook that compels plaintiff to defend the entire lawsuit.

Before the Court turns to analyzing the parties' arguments, it is worth noting that there have been several significant developments in Mazloum since the initiation of the instant case. On June 27, 2006, this Court dismissed Mazloum's conspiracy claims, which were centered upon 42 U.S.C. § 1985 and the District of Columbia's common law, against all defendants. Mazloum v. District of Columbia, 442 F. Supp. 2d 1, 11-15 (D.D.C. 2006). More importantly for present purposes, this Court dismissed the DCHRA and spoliation claims pending against Night & Day, Fiorito, Rehman, and Persons on November 6, 2007. Mazloum, 522 F. Supp. 2d at 57. Thus, the sole remaining claim against the Night & Day defendants in the underlying Mazloum action is the assault and battery claim against Persons (and Night & Day, vicariously). That matter is currently scheduled for trial beginning on April 23, 2008.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## DISCUSSION

As noted earlier, see supra n. 3, the District of Columbia adheres to the "eight-corners" rule with respect to insurance coverage disputes. Under that approach, whether an insurance company is "obligated to defend [the insured] turns on interpretation of both the contract terms and the allegations in the complaint." Stevens, 801 A.2d at 66 (internal citations omitted). Moreover, in the District of Columbia "the duty to defend is broader and more extensive than the duty to indemnify." Id. at 67 (citing Salus Corp. v. Continental Cas. Co., 478 A.2d 1067, 1069-70 (D.C. 1984)). Hence, an insurer incurs the duty to defend if "'the allegations of the complaint state a cause of action within the coverage of the policy.'" Id. at 66 n. 5 (quoting S. Freedman & Sons, Inc. v. Hartford Fire Ins. Co., 396 A.2d 195, 197 (D.C. 1978)). "Any doubt as to whether there is a duty to defend must be resolved in favor of the insured." Id. at 67.

At the time the parties briefed this motion, there were three pending claims against defendants: the assault and battery claim, the DCHRA discrimination claim, and the spoliation claim. Two of those claims are plainly not covered by the Policy: the assault and battery claim and the DCHRA discrimination claim. To begin with, coverage of the assault and battery claim

is barred by the "Assault and/or Battery Exclusion." As explained above, that exclusion precludes coverage of "any claim . . . arising out of assault and/or battery . . . whether caused by . . . any Insured, Insured's employees, patrons or any other person." Pl.'s Mot. Eggert Decl. Ex. 2 at 37. It is manifestly evident that Mazloum's complaint asserts an assault and battery claim against Persons (whom Mazloum claims also instigated the brawl). Indeed, the claim not only "arises out of" assault and battery; it <u>is</u> an assault and battery claim. As such, it falls squarely within the Policy's exclusion of such claims. Tellingly, defendants do not even contest this conclusion. It bears repeating that this assault and battery claim is the <u>sole</u> surviving count against defendants in the <u>Mazloum</u> proceedings.

 The DCHRA discrimination claim is no longer a live count in the <u>Mazloum</u> case. Nevertheless, it too would have been excluded from coverage in any event. The Policy's Combination General Endorsement excludes from coverage "[d]iscrimination charges, <u>of any kind</u>, actual and alleged." Pl.'s Mot. Eggert Decl. Ex. 2 at 33 § 7 (emphasis added). Mazloum's DCHRA claim against defendants proceeded on two bases. First, Mazloum asserted that he was singled out for a discriminatory beating on the basis of his race and ethnicity. That is undeniably a claim of discrimination barred by the Combination General Endorsement. Second, Mazloum also argued that he was retaliated against for engaging in a protected activity; here, filing his police report. That too is a claim for unlawful discrimination on its face pursuant to the DCHRA,[4] and it is similarly barred from coverage by the Combination General Endorsement provision. Defendants also do not contest this result.

---

[4] In <u>Mazloum</u>, this Court concluded that the alleged retaliation -- the destruction of the videotape evidence -- was more appropriately addressed under the spoliation of evidence claim rather than within the rubric of the DCHRA. <u>See</u> 522 F. Supp. 2d at 54.

The spoliation claim initially presents a somewhat more difficult question as it -- unlike the assault and battery and discrimination claims -- is not barred by a specific provision of the Policy.  Nevertheless, plaintiff has presented a litany of arguments as to why it comes within one of the Policy's general exclusions.  To begin with, plaintiff contends that the spoliation at issue here -- the alleged destruction of the videotape recording of Mazloum's beating -- does not constitute "bodily injury" or "property damage" within the sweep of the Policy.  Pl.'s Mot. at 15-16.  Specifically, plaintiff asserts that "Mazloum does not allege that he or his tangible property were physically harmed by the alleged destruction of the videotaped evidence of the assault."  Id. at 15.  Instead, plaintiff maintains, Mazloum's allegations in the spoliation claim amount to a contention that his prospect of prevailing on his other claims are diminished by the destruction of the tape.  Id.  And diminution in value of a cause of action, plaintiff argues, does not amount to cognizable "property damage."  Id. at 16 (citing Essex Ins. Co. v. Wright, 862 N.E. 2d 1194, 1196 (Ill. Ct. App. 2007); Iowa Mut. Ins. Co. v. Hennings, 2006 WL 2945477 at *7 (C.D. Ill. Oct. 13, 2006)).  Defendants respond that "the alleged destruction of the videotape evidence and Mazloum's loss of use of that tangible property . . . constitutes 'property damage' as defined by the Policy."  Defs.' Opp'n at 12.  Specifically, defendants argue that in "the spoliation of evidence claim at bar, the tort plaintiff alleges [is] that he is physically unable to use the lost or destroyed videotape evidence."  Id. at 13.

Plaintiff correctly points out that defendants have "no legal . . . support for the argument that spoliation is 'property damage,' which is defined as '[p]hysical injury to tangible property, including all resulting loss of use of that property.'"  Pl.'s Reply at 4 (citing Pl.'s Stmt. of Facts ¶ 27).  To the contrary, plaintiff cites a series of cases -- albeit none from within this Circuit, and

only one from any federal court -- that have held that "[a] diminished ability to prove a legal claim is not 'tangible property,' and therefore does not qualify as 'property damage.'" Id. at 4 & n.4 (collecting cases). In any event, defendants' argument is not persuasive. Even if the loss of the videotape is some form of property damage, the tape did not belong to Mazloum; in that sense, he did not lose "his" property. Instead, the videotape belonged to defendants. And loss of property (and its corresponding use) owned by the insured (defendants) is excluded from coverage by the Policy. Pl.'s Mot. Eggert Decl. Ex. 2 at 20.[5]

Even if the Court were to agree with defendants' position with respect to coverage of the spoliation claim, there is another powerful reason to side with plaintiff here. Indeed, the most compelling reason to find that the spoliation claim is not covered by the Policy is also the simplest: it is no longer a live claim in the Mazloum proceeding, having been dismissed by the Court. As explained above, the sole remaining claim against the Night & Day defendants in the Mazloum case is the assault and battery claim. To permit defendants to use the now-defunct spoliation Count to force plaintiff to defend an assault and battery claim expressly excluded from the Policy would be an odd result. The Court rejects that outcome.[6]

In sum, recent developments in the Mazloum proceedings have rendered many of the issues raised in these two motions moot. Indeed, the only remaining claim in Mazloum

---

[5] The parties also engage in a debate over whether the destruction of the videotape "arises out of" the assault and battery by Persons such that the spoliation claim would be barred by the "Assault and/or Battery Exclusion." Because the Court concludes that the spoliation claim is irrelevant to the coverage inquiry for other reasons, it need not address this issue here.

[6] There is arguably a question concerning whether plaintiff incurred an obligation to defend against the spoliation claim while it was still pending. This question has not been addressed by the parties. As indicated above, the Court is not inclined to find that the spoliation claim was covered by the Policy in any event.

applicable to these defendants is the assault and battery claim pending against Persons and Night & Day. That claim is expressly excluded from coverage by the plain terms of the Policy. As such, plaintiff has no duty to defend against it. The Court will therefore grant plaintiff's motion and deny defendants' motion.

## CONCLUSION

For the foregoing reasons, the Court will grant plaintiff's motion for summary judgment and deny defendants' cross-motion. A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
UNITED STATES DISTRICT JUDGE

Date: February 22, 2008